# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JULIE WARKINS, et al., | ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | )        Case No. 16-mc-216-CM-GEB |
| | ) |
| AARON PIERCY, as Administrator of | ) |
| the Estate of Dale Piercy, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on Petitioners' Motion to Quash Out of State Subpoenas (**ECF No. 1**). For the reasons outlined below, the motion is **DENIED**.

## I.        Background

Respondent Aaron Piercy, on behalf of his late father's estate, initiated a civil rights suit in the Northern District of Illinois after Dale Piercy died while incarcerated in an Illinois Department of Corrections ("IDOC") facility. Piercy claims his father vomited blood for a number of days while a prisoner of the IDOC, but received only over-the-counter acid reflux medication, and eventually died from untreated gastrointestinal bleeding. He asserts negligence and 42 U.S.C. § 1983 claims against

individual defendants Julie Warkins and Dan Williams, and a *Monnell*[1] claim against Advanced Correctional Healthcare, Inc. ("ACH"), the contract medical provider for IDOC. [2]Piercy claims ACH maintains a policy or custom of denying medical care to prisoners in its contract facilities, and that policy led to Dale Piercy's death.

As part of the discovery process in the Illinois suit, Piercy issued multiple subpoenas duces tecum to other facilities, in various states, where ACH supplies medical care.  Of the 144 subpoenas issued, 23 of the facilities which received subpoenas are located in Kansas.  All three ACH defendants named in the Illinois action now petition this Court—as the district of compliance—to either transfer consideration of the subpoenas back to the Northern District of Illinois, or quash the subpoenas.

## II.    Requests at Issue

The subpoenas Piercy issued contain the following four requests:

1.  All marketing, advertising, or promotional materials, including, but not limited to pamphlets, brochures, and power point presentations, provided or sent to the [County Name] County Sheriff's Office, [County name] County Jail, or any employee of the [County name] County Sheriff's Office by ACH.

2.  A copy of any contract between the County, Jail or Sheriff, and ACH.

3.   Documents sufficient to show the names and any offers, bids, or marketing materials provided by competing medical care providers at or around the time the County elected to contract with ACH.

---

[1] Plaintiff makes a *Monell* claim, alleging the inadequate medical care his father received was due to an official policy, custom, or practice of the defendants. *See Carter v. Glanz*, 22 F. App'x 973, 975 (10th Cir. 2001) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978).
[2] For ease of reference, in the remainder of this opinion, the Court will refer to the combined petitioners, Julie Warkins, Dan Williams, and ACH, collectively as "ACH."

    4.   A copy of the minutes of any County Board Meeting at which any contract with ACH was discussed.

Some of the Kansas facilities[3] responded to the subpoenas, although Piercy reports ACH sent letters to the facilities discouraging them from complying with the subpoenas until the motion to quash was decided.   ACH did not file a Reply in support of its motion to quash, following Piercy's Response, and therefore does not dispute this allegation.   None of the facilities which received subpoenas entered an appearance in this action, nor has any recipient of a subpoena filed a formal objection.

## III.   Arguments of the Parties

    ACH seeks to transfer its motion to the Northern District of Illinois so it may be decided by the same court presiding over the underlying action, or in the alternative, asks this Court to quash the subpoenas issued to the Kansas facilities.   ACH claims the subpoenas seek irrelevant information and the multitude of requests are not proportional to the needs of the case.

    In response, Piercy informs the Court that fourteen other district courts are, or have been, faced with similar motions arising from ACH's subpoenas to facilities in other districts.   Of those, at least twelve courts have denied the motions to quash.[4]   Because a

---

[3] As of the filing of ACH's Response brief on July 15, 2016, two facilities produced documents. (Resp., ECF No. 3, at 3).  It is unknown how many facilities may have responded to date.

[4] *See* Resp., ECF No. 3, Ex. A, providing copies of orders filed in the following 11 cases: *Piercy v. Wilhelmi*, No. 16-mc-788-VEH (N. D. Ala., May 16, 2016)(denying motion to transfer and motion to quash based upon lack of standing); *Piercy v. Wilhelmi*, No. 16-mc-1008 (Cent. D. Ill., May 27, 2016) (denying motion to transfer and the quash, in part, finding "Defendants have not demonstrated how their interests . . . are sufficiently impacted by the non-party subpoenas to find they have standing"); *Piercy v. Wilhelmi*, No. 16-mc-33-PJS-KMM (D. Minn., June 2, 2016) (denying motion to transfer and denying motion to quash based on lack of standing); *Piercy v.*

majority of those decisions denied the motions citing ACH's lack of standing, Piercy argues, as a threshold matter, that ACH lacks standing to seek to quash the subpoenas to third parties, and the motion must be denied on that basis.  Even if ACH had standing, Piercy contends the motion should not be transferred because no exceptional circumstances exist.  Additionally, if the Court should reach the merits of the motion, Piercy contends his subpoenas are proportional and seek information relevant to his burden to demonstrate ACH's company-wide policies and practices.  For these reasons, Piercy asks the Court to deny the motion to quash in its entirety.

## IV.    Applicable Law

Fed. R. Civ. P. 45 governs the issuance of subpoenas and the parameters for the Court to consider when deciding a motion to quash or request to transfer a subpoena-related motion.  Under Rule 45(d)(3), "the court for the district where compliance is required must quash or modify a subpoena that" meets various criteria, including one

---

*Wilhelmi*, No. 16-mc-15-JPS (E.D. Wis., June 10, 2016) (denying ACH's motion for lack of standing); *Piercy v. Wilhelmi*, No. 16-mc-43-NJR (S.D. Ill., June 17, 2016) (denying motion to transfer and motion to quash for lack of standing); *Piercy v. Wilhelmi*, No. 8:16CV209-JMG-CRZ (D. Neb., June 22, 2016) (denying motions without prejudice to allow parties subject to subpoena to weigh in); *Piercy v. Warkins*, No. 16-mc-00003-SBJ (S.D. Iowa, June 28, 2016) (denying motion to transfer or quash based, in part, on lack of standing); *Piercy v. Wilhelmi*, No. 16-mc-105-JSS (N.D. Iowa, June 29, 2016) (denying motion to transfer or quash for lack of standing); *Warkins v. Piercy*, No. 16-mc-9002-SRB (W.D. Mo., June 30, 2016) (adopting the ruling of four other districts and denying the motion to quash); *Warkins v. Piercy*, No. 16-mc-324-JAR (E.D. Mo., July 12, 2016) (denying motion to transfer or quash on lack of standing); *Warkins v. Piercy*, No. 16-00082-WOB-CJS (E.D. Ky., July 13, 2016) (denying motion to transfer or quash on the merits, and not reaching the issue of ACH's standing because a recordholder had filed its own motion to quash).

*See also* ECF No. 3, Exs. C, D, providing copies of the motions to quash and for protective order, and rulings thereon, filed in the underlying action, *Piercy v. Wilhelmi*, No. 14-7378 (N.D. Ill. May 24, 2016)(denying both motions at motions hearing).

which subjects the responding party (or non-party) to undue burden.  Rule 45(f) permits the court in the district where compliance is required to transfer a subpoena-related motion to the court which issued the subpoena, if either the responding party consents or the court finds exceptional circumstances exist.[5]

## A.    Motion to Transfer

ACH first seeks to transfer its motion to quash to the Northern District of Illinois pursuant to Rule 45(f).  Because the facilities who received subpoenas have not weighed in, this Court may only transfer ACH's motion "in exceptional circumstances," and, as the party seeking transfer, ACH "bears the burden of showing that such circumstances are present."[6]  The Court's primary concern is to avoid the burden to the Kansas facilities subject to the subpoenas, and it cannot assume the Northern District of Illinois is in a superior position to decide ACH's motion to quash.[7]  Because the facilities subject to the subpoenas have not objected, the Court cannot speculate they are improperly burdened. Additionally, although the Court's secondary goal must be to avoid the disruption of the underlying litigation,[8] the fact that multiple districts have retained their own related motions, and most have already ruled, demonstrates this Court's ruling is highly unlikely to disturb the progress of the underlying case.  ACH presents no unique circumstances in the motion pending before this Court which would set it apart from the others previously

---

[5] *See Gilbert v. Rare Moon Media, LLC*, No. 15-MC-217-CM, 2016 WL 141635, at *2 (D. Kan. Jan. 12, 2016) (discussing a motion to transfer under Rule 45(f)).
[6] Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendments.
[7] *Id.*
[8] *Id.*

decided throughout the country.  Without a demonstrated burden to the responding parties or disruption to the underlying litigation, ACH has fallen far short of achieving its burden to establish exceptional circumstances justifying transfer.  Therefore, ACH's motion to transfer is **DENIED**.

### B.       Motion to Quash

Finding the request to transfer unsupported, the Court turns to ACH's motion to quash the nonparty subpoenas.  As a threshold matter, ACH must demonstrate standing in order to oppose the subpoenas.  Generally, a "motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed."[9] However, the court may make an exception if the party seeking to challenge the subpoena has a personal right or privilege regarding the information requested.[10]

ACH's motion to quash did not address the concept of standing, but solely objected to the subpoenas as "beyond the reasonable scope of discovery and disproportionate to the needs of the case."  (Motion, ECF No. 1 at 9, ¶ 13.)  Even after Piercy addressed the issue of standing in his responsive briefing, ACH did not avail itself of the right to file a Reply to address the issue.  Because the ACH petitioners did not attempt to demonstrate either a personal right or a privilege in the information requested by the subpoenas, the Court finds they lack standing to challenge the same, and their motion must be denied.

---

[9] *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2015 WL 400904, at *3 (D. Kan. Jan. 28, 2015) (citing *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs,* Civ. A. No. 90–4207–S., 1990 WL 255000, at *1 (D. Kan. December 18, 1990)).
[10] *Id.*

**IT IS THEREFORE ORDERED** that Petitioners Julie Warkins, Dan Williams, and Advanced Correctional Healthcare's Motion to Quash Out of State Subpoenas (**ECF No. 1**) is **DENIED**.

## V.     Sanctions

Upon review of not only the parties' briefs, but the subpoena-related orders issued in other jurisdictions, this Court is particularly troubled by two concerns: 1) the initial filing of the motion to quash in light of the multitude of earlier orders denying similar motions in other districts; and 2) the Petitioners' failure to not only address the topic of standing in their motion (after the importance of the issue was made abundantly clear by the orders in other districts), but the absence of any reply to address the issue.  Although the ACH petitioners are certainly entitled to their day in court, and are not *required* to file a reply, their presentation of multiple motions to quash, even in the face of consistent rulings against them, give this Court much pause—particularly in light of what appears to be willful ignorance of the ultimate issue.

On review of relevant authority, it is unclear, at best, whether either the federal rules or applicable case law allow for sanctions on a party or counsel bringing a potentially unmeritorious motion to quash.  Rule 45 is devoid of available sanctions, aside from those permitted under Rule 45(d)(1) where a party or attorney serves a subpoena imposing undue burden or expense on a responding party—which is inapplicable in this context.  Likewise, Rule 37 discovery sanctions appear unavailable in

the context of a subpoena-related motion to quash.[11]  However, the previous Kansas federal courts addressing the interplay of Rule 37 sanctions in the context of a Rule 45 motion reviewed potential sanctions on a *nonparty*,[12] which is distinguishable from the situation herein, where the Court considers the imposition of sanctions on a *party* to the action.  But respondent Piercy has not requested costs, attorney's fees, or other sanctions as a result of the subpoena dispute, and the Court is loathe to pursue the topic under Rule 45 in light of questionable authority and the absence of a request from the opposing party.

However, the lack of authority under Rule 45 does not preclude the Court from exploring, sua sponte, what it perceives as potential misuse of the litigation process and imposition of both unnecessary costs to the parties and burden on the courts.  In part, the Court addresses the issue based upon its "indefeasible power" to "fashion an appropriate sanction for conduct which abuses the judicial process."[13]  But in addition to the Court's inherent power to control its cases, Fed. R. Civ. P. 11(b) makes clear that, through the presentation of their motion to this Court, the ACH petitioners and their attorneys certified:

> . . . to the best of [their] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

[11] *See N.L.R.B. v. Midwest Heating And Air Conditioning, Inc.*, 528 F. Supp. 2d 1172, 1181 (D. Kan. 2007), *objections overruled sub nom. N.L.R.B. v. Midwest Heating & Air Conditioning, Inc.*, 251 F.R.D. 622 (D. Kan. 2008) (finding Rule 37 inapplicable to consideration of sanctions to a nonparty for failure to comply with a subpoena, and finding sanctions "appropriate under Rule 45 only if a nonparty is declared in contempt on the basis of its failure to comply with subpoena."); *see also In re Motor Fuel Temperature Sales Practices Litig.*, No. 07-MD-1840-KHV, 2010 WL 11431875, at *6 n.41 (D. Kan. July 7, 2010) (collecting cases suggesting Rule 37(a)(4) is inapplicable to motions to compel under Rule 45).

[12] *See N.L.R.B.*, 528 F. Supp. 2d at 1181; *In re Motor Fuel*, 2010 WL 11431875, at *6 n.41.

[13] *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1255 (10th Cir. 2015) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, at 44-45 (1991)).

> (1) [the motion] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; [and]
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . [14]

If the Court questions these representations, Rule 11(c)(3) permits the Court, on its own initiative, to "order an attorney, law firm, or party to show cause why" its conduct does not violate Rule 11. Considering the twelve-plus court orders denying motions to quash in other jurisdictions[15] on the issue of standing, and the ACH movants' complete disregard of the standing issue in spite of those decisions, the Court finds it questionable whether the motion to quash, addressed herein, was warranted by existing law or by any nonfrivolous argument for modifying or establishing law.

**IT IS THEREFORE ORDERED** that Petitioners Julie Warkins, Dan Williams, and Advanced Correctional Healthcare and their counsel must **SHOW CAUSE** to this Court, on or before **December 22, 2016**, why their conduct has not violated Fed. R. Civ. P. 11.

---

[14] Fed. R. Civ. P. 11(b). *See Player Piano Parts, Inc. v. Burdick*, No. 09-1178-EFM, 2010 WL 4955933, at *2 (D. Kan. Dec. 1, 2010) ("[A]n attorney's actions must be objectively reasonable in order to avoid Rule 11 sanctions" and ""The primary purpose of sanctions is to deter *attorney and litigant misconduct*, not to compensate the opposing party for its costs in defending a frivolous suit") (emphasis added) (citing, in part, *White v. Gen. Motors Corp., Inc.,* 908 F.2d 675, 680 (10th Cir.1990)).

[15] *See supra* note 4 and accompanying text.

**IT IS SO ORDERED**.

Dated this 12th day of December, 2016, at Wichita, Kansas.


s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge